**EXHIBIT C**

# DECLARATION OF CAROLINE PEATTIE

1. My name is Caroline Peattie. I am over the age of eighteen and am competent to make this declaration. I have personal knowledge of the matters set forth herein.

2. I am Executive Director of the Fair Housing Advocates of Northern California ("FHANC"). Fair Housing Advocates of Northern California, formerly Fair Housing of Marin, is a non-profit corporation based in San Rafael, California and serving Marin County and other parts of Northern California.

3. FHANC is the only full-service fair housing agency in Marin County and the only HUD-certified housing counseling agency in the county. Our mission is to ensure equal housing opportunity and promote racially integrated communities and neighborhood diversity. Among the activities FHANC engages in to further this mission are counseling residents of the communities we serve about their fair housing rights and how to vindicate those rights; providing community education programs that inform residents of their fair housing rights; working with advocates, housing providers, tenants, homeowners, homebuyers, social service providers, and others to protect the fair housing rights of the clients and communities that FHANC serves; training housing providers and other real estate professionals how to comply with fair housing laws; filing administrative complaints with HUD on behalf of FHANC and the clients and communities we serve; and litigating in court.

4. During the fiscal year 2018-2019, FHANC served 4,747 tenants, homeowners, homebuyers, housing providers, children, social service providers, and advocates. Of the fair housing clients assisted by FHANC, 90% of clients were extremely low, very low, or

low-income households. In addition, 29% of fair housing clients were Latinx, 13% of whom spoke little to no English, and 21% were Black.

5. FHANC has relied on the principles included in the previous disparate impact rule for many years in our efforts to help eliminate barriers to housing and promote equal opportunity. On October 13, 2019, I sent a comment letter on behalf of FHANC to the Department of Housing and Urban Development strongly opposing changes by the Department to its existing disparate impact rule. A copy of that letter is posted on our website at http://www.fairhousingnorcal.org/in-the-news.

6. As part of our work, FHANC works to change rules, policies and practices that have a significant disproportionate adverse impact on communities of color, families with children, and other marginalized groups protected under the Fair Housing Act. FHANC counsels our clients and client communities about how disparate impact law can be used to require less discriminatory alternatives to policies that have discriminatory and segregative effects. Policies and practices that have significant disproportionate adverse impact on the client communities that FHANC serves include occupancy restrictions; criminal records bans on those seeking housing; source of income restrictions (including restrictions on those seeking to use Section 8 vouchers); bank policies that have the effect of redlining minority communities or targeting those communities for predatory practices; policies that have the effect of evicting survivors of domestic violence from their homes; zoning and other municipal policies that perpetuate racial segregation; and practices that result in the deterioration of foreclosed properties in communities of color.

7. FHANC's efforts to combat these discriminatory practices are not limited to counseling clients and the communities we serve. We file administrative complaints and federal

litigation on behalf of these clients and client communities that use disparate-impact law to challenge these practices and require less discriminatory alternatives. We advocate with housing providers, social service agencies, and local governments about how to comply with disparate-impact law in ways that promote our fair housing mission.

8. In addressing these issues and practices, we rely on well-settled law, as set forth in the 2013 HUD rule and applied for decades by courts, HUD, and state and local governments, to protect fair housing rights and pursue our mission. We also rely on HUD guidance based on this long-standing law, including HUD's criminal background guidance. Being able to rely on well-settled disparate impact law and guidance is critical to our organization's efforts. HUD's new rule will significantly interfere with our ability to conduct these activities and provide these services successfully.

9. FHANC is already receiving calls from potential clients whose cases are now more difficult to resolve favorably because of the Final Rule. At the most basic level, the Final Rule complicates every intake complaining of a potential fair housing violation, as it is no longer clear what constitutes an enforceable violation. Staff will have to be retrained and any investigation will have to be much more extensive and costly to account for the uncertainty as to what evidence is necessary after the Final Rule. The harm caused by the new standards extends beyond the organization to all of our clients and all of our potential claims involving disparate impact.

10. FHANC has already confronted questions from our own staff and from the public about the effect of the new rule. Our staff speak to callers who have been rejected for housing because they have a criminal background but cannot adequately assist callers, because HUD has not only changed the legal standard in such cases to one that is unrecognizable, it

has also signaled in the rule that it is questioning helpful HUD guidance on criminal backgrounds that FHANC had been able to rely on in counseling such callers and assisting them in enforcement. Because it was HUD guidance, relying on it allowed us to know that HUD would accept a complaint if the circumstances were covered by HUD's interpretation, and it meant that such cases could be, and were, resolved without the need to resort to enforcement. That process has been upended as a result of HUD's new rule.

11. FHANC is considering a complaint against a large landlord involving discrimination based on race and source of income and evaluating whether it could be filed in federal court or with HUD under the new rule. Source of income discrimination, which is increasingly a barrier to affordable decent housing, is a common complaint handled by FHANC. A challenge to this form of discrimination is less likely to succeed under the new rule. This significantly harms several current enforcement initiatives because identifying discrimination against voucher holders and other forms of financial assistance is a key component of the way FHANC fights segregation in our service areas.

12. FHANC also advocates in support of Fair Chance housing ordinances. A Fair Chance ordinance is a law adopted by a local jurisdiction (usually a city or a county) limiting the use of criminal records by landlords when they are screening current or prospective tenants. These ordinances respond to the disparate impact based on race of overbroad screening policies. HUD's guidance on the subject was an important tool for our advocacy efforts regarding Fair Chance ordinances. The loss of the disparate-impact framework and particularly the loss of the less discriminatory alternatives inquiry means that it will be harder for us to advocate for Fair Chance ordinances and get them adopted because

opponents will point to the changes in the HUD regulation as one of the bases for their opposition.

13. FHANC also engages in a variety of education programs, including conferences, seminars, and school programs. We train tenants, housing providers, advocates, and others on recurring fair housing issues. This has always been an efficient way for us to prevent fair housing violations before they happen.

14. Our education programs, too, are harmed by the Final Rule. The Final Rule unsettles basic principles that underlie fifty years of disparate impact caselaw and guidance, such as the requirement to adopt a less discriminatory alternative. FHANC no longer can say with authority what practices the Fair Housing Act's disparate impact doctrine bars, if any. We will have to substantially revise all our training materials, and even then those materials will not be as effective in providing concrete guidance for avoiding Fair Housing Act violations.

15. The Final Rule will cause FHANC to divert our limited resources from investigations, representations, and other mission-related activities that it would otherwise engage in. We will need to expend more resources to explain the new rule to clients and client communities and otherwise counsel clients about their fair housing rights, and we likewise will have to expend more resources to pursue the work that is undermined by the Final Rule.

16. For example, we will have to do more detailed investigation and analysis before we can file a lawsuit or administrative complaint that is not quickly dismissed, or develop a strong enough case to succeed in informal advocacy with landlords. Clear violations that formerly could be remedied quickly are already taking us longer to resolve. In all our work, we will

have to expend more staff time and funds than before to accomplish the same results, and so we will be able to serve fewer members of the community because of this diversion of our resources.

17. This interference with and impairment of our ability to perform the fair housing work described above will significantly harm our clients and the communities we serve. There will be no redress for many violations of clients' and community members' fair housing rights because the disparate-impact law that is crucial to FHANC's ability to achieve voluntary or compulsory compliance will be eviscerated in so many critical respects. The lack of redress will, furthermore, cause more violations to occur as landlords and others discover that they can easily avoid liability despite discriminating.

18. These direct consequences of the Final Rule will impair our ability to accomplish our mission of ensuring equal housing opportunities and promoting racially integrated communities and neighborhood diversity. They will cause a substantial setback to and frustration of our mission. Redressing the frustration to our mission going forward will require us to invest and expend significant new resources to forestall and counteract conduct and violations that would not occur but for the Final Rule.

19. The Final Rule will cause us to divert our limited resources from investigations, representation of clients, advocacy, and other mission-related activities that we would otherwise engage in. FHANC will need to expend more resources to explain the new rule to clients and client communities and otherwise counsel clients about their fair housing rights, and we likewise will have to expend more resources to pursue the work that is undermined by the Final Rule.

20. For example, it will require significantly more factual development to file a lawsuit or administrative complaint that is not quickly dismissed, or to compile a strong enough case to succeed in informal advocacy with landlords. Clear violations that formerly could be remedied quickly are already taking longer to resolve. In each part of our operations, FHANC will have to expend more staff time and funds than previously, and so we will be able to serve fewer members of the community because of this diversion of our resources.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and accurate. Further, I certify that I am qualified and authorized to file this declaration.

Executed within the United States on October 21, 2020.

*Caroline Peattie*

CAROLINE PEATTIE